In re Jesse Baldemar **RODRIGUEZ,**
Debtor.

No. 402–41534–DML–13.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

July 31, 2002.

James M. Morrison, Fort Worth, TX, for Debtor.

Andrew F. Emerson, Dallas, TX, for Plaintiff.

### MEMORANDUM OPINION AND ORDER

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before the Court is the objection (the "Objection") of Cadlerock, L.L.C. ("Cadlerock") to the homestead exemption claimed by debtor Jesse Baldemar Rodriguez ("Debtor") in his chapter 13 case. On July 1, 2002, the Debtor filed a response to the Objection (the "Response") in support of the previously claimed exemption. On July 25, 2002, the Court received evidence and heard oral arguments from Cadlerock and the Debtor in support of their respective positions. In addition, Cadlerock submitted a letter brief (the "Letter Brief") to the Court on July 25, 2002. This memorandum consti-

tutes the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr.P. 7052 and 9014. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

## I. Background

Cadlerock is the owner and holder of two real estate lien notes (respectively, the "First Note" and the "Second Note", and, together, the "Notes"), both executed on January 26, 1990 by the Debtor and Jose Pena Quintana ("Quintana"), the Debtor's former stepfather. The First Note and the Second Note are each secured by a deed of trust (respectively, the "First Deed of Trust" and the "Second Deed of Trust", and, together, the "Deeds of Trust"). Both Deeds of Trust were executed by the Debtor and Quintana on January 26, 1990. The real property made subject to the First Deed of Trust is thirty (30) acres, more commonly known as 4800 South Nolan River Road, Cleburne, Texas (the "4800 Property"). The real property made subject to the Second Deed of Trust is thirty (30) acres, more commonly known as 4900 South Nolan River Road, Cleburne, Texas (the "4900 Property", and, together with the 4800 Property, the "Property").

Each of the Deeds of Trust contains a paragraph 14 (the "Due on Sale Clause"), which provides substantially as follows:

The [Debtor and Quintana] agree the above described property shall not be sold or conveyed without the written consent of the beneficiary or the holder of the indebtedness secured hereby, and in the event that the herein described property is sold or conveyed without first having obtained such written consent, then in that event [Debtor and Quintana] agree that the beneficiary herein or the holder of the indebtedness secured hereby may at its option declare such indebtedness wholly due and payable.

The Property is located on South Nolan River Road. Although South Nolan River Road originates within the city limits of Cleburne, Texas, the Property lies outside of those city limits. The Property is served by the County Sheriff rather than the Cleburne Police Department, and a volunteer fire department rather than the Cleburne Fire Department. Further, the Property is serviced by its own well rather than municipal water; receives natural gas from a tank on the Property rather than through municipal service; and does not receive septic or storm sewer service.

Subsequent to the acquisition of the Property by Quintana and the Debtor, the marriage between Quintana and the Debtor's mother, Virginia Castillo ("Castillo"), ended in divorce. As part of the divorce settlement, Castillo received Quintana's undivided interest in the Property. On July 23, 2001, Castillo, by general warranty deed, conveyed her interest in the Property to the Debtor, thereby leaving the Debtor with a 100% undivided ownership interest in the Property.

Debtor filed his chapter 13 petition on March 1, 2002 (the "Petition Date"). On April 5, 2002, and in connection with the preparation of his chapter 13 schedules, the Debtor included the 4900 Property on Schedule C of Official Form 6 (property claimed as exempt). On May 10, 2002, the Debtor amended his Schedule C to include the 4800 Property on the list of property claimed as exempt.

## II. The Objection

Through the Objection, Cadlerock questions the propriety of the Debtor's designation of the Property as an exempt homestead under Tex. Prop.Code § 41.002 (2002), which is given effect for purposes of the issue at hand pursuant to 11 U.S.C.

§ 522.[1] More specifically, Cadlerock objects to the Debtor's exemption designation because: (1) the Debtor's schedules do not describe the Property with sufficient specificity to allow creditors to ascertain whether the designation is a proper exercise of the Texas Property Code's provisions for homesteads; (2) Quintana's conveyance of his interest in the Property to Castillo, and Castillo's subsequent conveyance of that interest to the Debtor was in violation of the Due on Sale Clause, and this invalidates the Debtor's designation of the Property as an exempt homestead; and (3) the Property is not a "rural" homestead within the definition of the Texas Property Code, and so this Court should not give effect to the Debtor's exemption designation.

### III. Discussion

After considering the Objection, the evidence, the Response, oral argument presented by the parties, and the Letter Brief, the Court holds as follows with respect to the Objection:

### A. Lack of Specificity

Cadlerock has alleged that the Debtor's schedules, and the subsequent amendment thereof, lack the specificity required to allow creditors to assess the propriety of the exemptions claimed therein. Fueling Cadlerock's concern is the treatment of the Property in other documents not related to the Debtor's bankruptcy case. The Johnson County tax records divide the Property into at least four parcels for purposes of taxation, and list the Debtor as the owner of record for only the 4800 Property. The tax records also refer to a portion of the Property as subject to the "homestead exemption" in the context of the Texas Tax Code, which exempts a portion of the value of a property from taxation.

The Court finds and concludes that neither the content of the Debtor's schedules, nor the extrinsic descriptions and designations of the Property, create such ambiguity as to prevent creditors from ascertaining whether the Debtor's invocation of the "homestead exemption" (as that term is used in the context of the Texas Property Code) is proper. Thus, the Court finds and concludes that the description of the Property set forth in the Debtor's schedules meets the specificity requirements of Fed. R. Bankr.P. 1007 and 4003, and of Official Form 6. The Objection is, accordingly, overruled as it applies to the specificity (or alleged lack thereof) of the Debtor's schedules.

### B. Unauthorized Conveyances

■ Cadlerock next contends that the transfers of an interest in the Property from Quintana to Castillo, and from Castillo to the Debtor, without first obtaining the written consent of Cadlerock contemplated by the Due on Sale Clause, preclude the Debtor's designation of the Property as a "rural homestead" pursuant to section 41.002 of the Texas Property Code. In support of this proposition, Cadlerock has cited to this Court *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434 (Tex.Civ.App. El Paso 1967, writ ref'd n.r.e.) and certain of its progeny[2] for the proposition that Tex-

---

1. The Court questions Cadlerock's interest in the Debtor's designation of exempt property. As Cadlerock is secured by the Property, it does not appear affected by the designation. Absent any economic interest in whether the Debtor's homestead exemption is proper, Cadlerock's standing is dubious. As the Debtor has not raised that issue, however, the Court will consider the merits of the Objection.

2. In the Letter Brief, Cadlerock directed the Court's attention to the *Baucum* case, and also to *Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex.App.-Houston [14th Dist.] 1983, ref. n.r.e.) and *Pace v. McEwen,* 617 S.W.2d

as' exemption laws may not be used to shelter ill-gotten gains.

Without questioning the holding in *Baucum* or the other cases cited by Cadlerock, the Court finds these cases to be inapposite to the case at hand. In each of *Baucum*, *Lifemark*, and *Pace*, the court wrestled with the appropriate balance to be struck between Texas' exemption laws and the outright fraudulent behavior of a party seeking the protection thereof. Although the Objection intimates that the transfers not in accordance with the Due on Sale Clause and the Debtor's subsequent designation of the Property as exempt somehow constituted a fraud on Cadlerock and this Court, Cadlerock has failed to come forward even a scintilla of evidence in support of its allegation of fraud. While Cadlerock may have a remedy against the Debtor for acting in contravention of the Deeds of Trust, the Court does not find the actions giving rise to that remedy to be a sufficient basis to vitiate the Debtor's designation of the Property as exempt.

■ Moreover, this Court finds and concludes that the conveyance from Castillo to the Debtor merely effected a transfer of an interest in the Property to a Grantor (as that term is defined in the Deeds of Trust) from a non-Grantor. Presumably, the Due on Sale Clause's purpose was to prevent the alienation of interests in the Property from the obligors under the Notes, who were also the Grantors under the Deeds of Trust. A transfer that returned a previously alienated interest in the Property to a Grantor could not be a violation of the Due on Sale Clause.

For these reasons, the Objection is overruled insofar as it asks this Court to deny the Debtor's designation of the Property as exempt.

## C.  Rural versus Urban Homestead

Finally, Cadlerock contends the Property does not qualify as a "rural homestead" within the meaning the Texas Property Code. At issue here is whether the Debtor is able to designate the entire Property as a "rural" homestead, or whether the Debtor is limited to designating only some portion of the Property as exempt as an "urban" homestead.

Resolution of this issue seems to the Court to be simply a matter of reading the applicable portion of the Texas Property Code. Section 41.002 of the Texas Property Code, which was amended by the Texas legislature in 1999,[3] reads in relevant part as follows:

### § 41.002. Definition of Homestead

(b) If used for the purposes of a rural homestead, the homestead shall consist of:

(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.

(c) A homestead is considered to be urban if, at the time the designation is made, the property is:

(1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; *and*

---

816 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ).

3.  Acts 1999, 76th Leg., ch. 1510, § 1, eff. Jan. 1, 2000; Acts 1999, 76th Leg., ch. 1510, § 2, eff. Sept. 1, 1999.

(2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality:

    (A) electric;

    (B) natural gas;

    (C) sewer;

    (D) storm sewer; and

    (E) water.

(d) The definition of homestead as provided in this subsection applies to all homesteads in this state whenever created.[4]

■ As a backdrop to determining the homestead issue before it, the Court recognizes that homesteads are "favorites of the law" and that liberal construction must be given to the constitutional and statutory provisions that protect homestead exemptions. *See Bradley v. Pacific Southwest Bank (In re Bradley),* 960 F.2d 502, 507 (5th Cir.1992), *cert. denied, Commonwealth Land Title Insurance Co. v. Bradley,* 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993).

While both Cadlerock and the Debtor cited to this Court decisions of the Court of Appeals for the Fifth Circuit demonstrating the treatment typically afforded the Texas homestead exemption and cases under prior law inquiring into the meaning of "rural homestead", neither party cited any decision treating the distinction between rural and urban homesteads since the Texas legislature amended the applicable provisions of the Texas Property Code.[5] Prior to the 1999 revisions, courts facing the issue of whether a homestead should be deemed urban or rural developed a hybrid "factors" test which looked first to the language of old section 41.002,[6] and then to the common law definition of homesteads if the statutory language was not dispositive of the issue. *See Bradley,* 960 F.2d at 512 n. 18. Among the common law factors to be considered were: (1) the location of the land with respect to the limits of the municipality; (2) the situs of the lot in question; (3) the existence of municipal utilities; (4) the use of the lot and adjacent land; and (5) the presence of platted streets, blocks and the like. *See Id.* Even if guided by these factors, the Court would conclude that the Debtor's homestead is rural. As it is, the 1999 changes in section 41.002 obviate the need to address the *Bradley* factors.

■ This Court finds instructive the decision of the Honorable Leif M. Clark in *In re Perry,* 267 B.R. 759, 766–767 (Bankr. W.D.Tex.2001). In *Perry,* Judge Clark also faced the issue of whether a parcel of land was eligible for the "rural", as opposed to "urban", homestead exemption under the current version of the Texas property Code. As the reasoning in *Perry* is sound, this Court adopts Judge Clark's analysis. To begin with, section 41.002 itself sets out a two-part test. The first prong is whether the property is "located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision." § 41.002(c)(1). The second prong asks three questions: (1) whether the property is served by municipal police

---

4. TEX. PROP.CODE § 41.002 (2002).

5. The 1999 amendments to section 41.002 became effective on January 1, 2000. By reason of section 41.002(d), the 1999 amendments are applicable in determining the homestead exemption to which Debtor is entitled.

6. Prior to the aforementioned amendments, section 41.002(c) read as follows:

    (c) A homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection.

protection, (2) whether the property is served by paid or volunteer fire protection; and (3) whether a municipality provides the property with three of the following services: (i) electric, (ii) natural gas, (iii) sewer, (iv) storm sewer, and (v) water. § 41.002(c)(2)(i)—(v). If the property fails either the (c)(1) test or one of the three inquiries under (c)(2), the property will be deemed "rural", and no further inquiry is necessary. It is only when the property satisfies both the (c)(1) and (c)(2) tests, and the debtor is not content to accept an "urban" homestead designation, that the court must engage in the traditional test articulated in *Bradley*.

 Here, the Property is clearly not an "urban" homestead within the definition of section 41.002. Only for the purpose of disposing of the Objection, this Court assumes, *arguendo*, that the Property is located in a platted subdivision (and thus satisfies the (c)(1) test), and that the Property is served by police protection and fire protection (and thus satisfies the first two elements of the (c)(2) test). It is when the Court considers the final element of the (c)(2) test that it becomes clear that the Property cannot be an "urban" homestead. More specifically, the Property receives none (and certainly not the requisite three) of the following services from a municipality: (a) electric; (b) natural gas; (c) sewer; (d) storm sewer; or (e) water.

Given the impossibility of the Property being deemed an "urban" homestead, it is not necessary for this Court to consider the common law factors set forth in *Bradley*. Accordingly, the Court finds that the Property is a "rural" homestead within the definition of section 41.002. The Objection, as it applies to eligibility of the Property as a "rural" homestead is, therefore, overruled.

## IV. Conclusion

In conclusion, the Court holds that the Objection must be overruled in its entirety, and that the Debtor's designation of the entire Property as a "rural" homestead is proper under the definition set forth in TEX. PROP.CODE § 41.002.

It is therefore

ORDERED that the Objection is overruled.